It is 4090676 M. R. A. Pamela M. for the appellant Ms. Spahn and for the appellee Mr. Mansfield and Mr. Huska? Husak. Husak. Are you both hired yet? We are. Have you split your time? We will. You may proceed. Thank you. Good morning and may it please the court. My name is Laurel Spahn. I'm an attorney with the Legal Advocacy Service Division of the Illinois Guardianship and Advocacy Commission. I'd like to introduce you also to Ms. Pamela M who is present in court today. She lives actually just a few blocks from here and wished to be present this morning to hear this oral argument. It was in 1976 when the Governor's Commission on Revision of the Mental Health Code issued its report. Part of that report included section 3-704 of the Mental Health Code. And 3-704 is basically using and applying the least restrictive alternative at the front end of the commitment process in addition to what we already know about least restrictive alternative at the back end of the commitment process. And this court has recently issued a couple of orders about least restrictive alternative and disposition which is at the end of the commitment proceeding. At the beginning of the commitment proceeding, 3-704 requires a finding of necessity before a court can order a peace officer to pick up a person and take that person to a mental health facility for a psychiatric examination. This is different from an instance where a police officer observes potentially dangerous, harmful, neglectful behavior, whatever the case may be. This is different from when a police officer actually observes that behavior, picks up the person, and then takes the person to the hospital for psychiatric examination and possible certification for purposes of commitment. 3-704 addresses the situation where somebody comes and says, I think my neighbor, my friend, my loved one may be in need of mental health treatment. I don't have a certificate, but I think maybe they could benefit from an examination for that purpose. So 3-704 provides a mechanism for that. 3-704 of the Mental Health Code provides that a person should remain at home pending that psychiatric examination to determine possible need for hospitalization unless an emergency exists. But this was rarely used back in the 70s and earlier at the time that report came out. And, your honors, it is rarely, and I would say basically never used, 34 years later. Is there any merit to the state's argument that you waived it by not bringing it up in the trial court? Well, I think that this court has historically applied plain error to items of statutory compliance like this again and again. And I have cited to those cases in the briefs. For example, when the petition doesn't name friends and relatives as required by the Mental Health Code, this court has said that's a statutory compliance issue, we are not going to consider that waived. And waiver is a limitation on the parties and not the courts. But I would ask that this court consider this important issue because of this 34-year history of the individuals who were on the Governor's Commission. Recognized back then that this was not being used. And sadly, it's still not being used. And I have been doing mental health cases for over 17 years. I have mainly been doing trial work in Cook County, but I have been doing appeals from around the state. And I can tell you that this is rarely used. It's much more expedient for the court to issue an order and have the person picked up by the police than to say, well, you know, I don't really see an emergency here. Let's issue an order saying that this person shall report within 36 hours for an examination. I don't see it and I don't think it's ever been challenged before because it just doesn't come up at trial. And certainly by the time of trial, the main focus is on, at this point in time, does the person meet the commitment criteria? The fact that it's not used, if you're basing that on anecdotal experience, isn't it possible that it's used and then that never becomes a matter of litigation? The person could even sign a voluntary after the pickup. I understand the point you're making, but at the same time we don't really know whether it's used and used, I don't want to say successfully, but used in an appropriate way and things happen and then there's no litigation. That is possible. That is possible. And if that's what's happening, then in the cases where that's happening, then the system is working. I can tell you that what is more likely to happen, at least in my experience in Cook County, is that someone does come with the state's attorney before a judge and the judge is making a decision whether to issue a writ. And what happens is either the writ is issued or the writ is not issued. There's no bothering with this 36 hours. Either there's enough information for the police to pick up or there's not. And there is actually a very brief hearing in Cook County, ex parte, with the state's attorney, with a witness, with a judge, to determine whether or not to issue a writ of detention and have a peace officer pick someone up. Well, I would agree that liberty is the most important if we're balancing. The next most important, I suppose, would be the sanctity of one's home. And yet, for a very, very long period of time, judges have met, ex parte, with prosecutors and witnesses and issued search warrants. And you sometimes have litigation testing the reliability of the information received and the validity of the warrant after the fact. But nonetheless, and I understand that that is somewhat different, but it involves a liberty interest because if the search warrant is successful, it's probably going to result in the arrest of one of the householders. And yet, that is a time-honored, tested means by which to bring something to the attention of the court because of the public interest, in that instance, in solving crime. This is different, I understand, but it's the same idea. So isn't there a difference between what you do at the beginning of the process and what you do at the end of the process regarding least restrictive alternative? Given that we have a successful parallel in the criminal law where there are checks and balances, and I know judges that have said, and I've said as a trial judge, you don't have enough for a warrant. I'm not going to issue it. Well, first of all, mental health cases are considered quasi-criminal because there is the loss of liberty. We don't have the, we have, how do I put this, we have innocent people who are through no fault of their own because of a mental illness, allegedly because of a mental illness. They are suspected of being at need for hospitalization. For protection of these individuals who are already alleged to have a mental illness, it makes sense for the law to provide some reasonable accommodation so that we are not making matters worse by having a police officer show up at their door unannounced and saying, you've got to come with me. That's exactly what happened in this case. I am not a criminal lawyer. We do find parallels in the criminal law, but if we look at this case in particular, there's no evidence that anything was done other than signing the order to have the person brought in. And as you know from the briefs, I contacted the niece involved in this case, who was the one who came and said, I think my aunt needs to have an examination for possible hospitalization.  There was no, the evidence, the record shows no inquiry and no finding of necessity here. And that's what I'm asking for. That's what's important here. And I think if there had been that consideration, there had been that inquiry, there had been a judge hearing from this niece and finding out if there's credible information to support having the person brought in. I would not be doing this issue today. I would not be arguing it. Is your argument that the petitioner must testify before the court can make a finding of necessity? I don't know that it necessarily has to be the petitioner, but I think that before the court can make a finding, the court has to hear some evidence. And, you know, I'm not even asking that Respondent's Counsel be included. I'm saying that there needs to be something on the record that warrants the judge entering this order to go and pick up this alleged mentally ill person. So your argument then is there must be some testimony before the court can make the finding of necessity? Yes. There must be some evidence. You know, we know that the petition itself is not evidence. And anyone can fill out a petition if they're 18 or older. Anyone can say anything in that petition. And I've certainly seen petitions that were bogus and that have gotten dismissed because of someone filing a petition for the wrong reasons. We can't just trust the petition. We can't just say, oh, apparently this is a loving family member. I'm sure this loving family member is concerned. I think it's okay. Let's have the person picked up. And as I explained in the reply brief, too, there are other alternatives to sending the police out to pick up a person to come to the hospital. I think this is being challenged for the first time here, too, because it did come up at trial. Ms. M. explained in her testimony at the trial level what happened, what it was like for her. She's in her bathrobe at home. She's about to take a shower. The police knock on her door. They force her way in. She was very upset and worried. Is this the best plan for dealing with a person with mental illness? I mentioned in the reply brief that we do have the community organizations, such as the Department on Aging, which may have been a much better approach here. I think this statute is constitutional. I included the constitutional analysis in the event the court believes that the statute does not require a finding of necessity before directing police to pick up a person to bring to the hospital. I think if that's the case, then I think this court needs to look at the constitutionality of the statute. I think this court can interpret it in such a way as to require that finding of necessity. And this is not a mini-trial that I'm asking for. This is just a brief inquiry to find out if this is an emergency situation where we need to do this. Otherwise, the person is at risk or someone else is at risk. So another way to say this is that you ought to have a finding of necessity. In order to make a finding of necessity, there ought to be a sufficient inquiry to satisfy procedural due process. And while you've reasoned or suggested that it ought to be the petitioner, at least that's what I understand the earlier argument to be, but now you've said maybe it doesn't have to be. It has to be a live person. And it could perhaps be a police officer who's conferred with the petitioner and who has reliable corroborative information from neighbors or a previous incident with a respondent. It could be that. I mean, a conglomeration of information and material that would be somewhat analogous to probable cause in a criminal case. It's likely that this stuff is true. And if true, that means that there is a necessity to do this and to do it with speed and haste as opposed to waiting and notifying the person. And I agree with most of what you said, but I think that the emergency needs to be based on what's happening now. You mentioned other incidents. Well, the emergency could be based upon the fact that there's a deteriorating condition.  I don't know if that would give you a base of knowledge to evaluate. If you were the police officer or the community mental health worker who was assisting the petitioner or was the person providing the information to the judge, I think I heard you say that the information could come from someone other than the petitioner, as long as it's funneled to the court. But I think it should be somebody, I mean, ideally it would be someone who is named on the petition. You know, there is the petitioner. And sometimes it's not the person who is observing the behavior who is signing the petition. It might be a crisis worker. It might be a staff person at an emergency room. But the petition does require that witnesses be listed and that family members be listed. And I think if you are drawing from someone on that list on the petition, someone who has the personal knowledge who could come in and say, here's what the emergency is, here's what I see as the emergency. And going beyond just the finding of necessity, I think this is where the court can be maybe a helpful problem solver, maybe can apply therapeutic jurisprudence and say, wow, I hear you. I hear that you feel, for example, you feel that your aunt is not taking care of the skin condition appropriately. Maybe it would be better to have somebody else from the community first before we take this drastic step of having the police show up at her door and take her to the hospital. I will issue your three-day examination notice, but in the meantime, here's the number for the Area Department on Aging. I think maybe you should call that organization and ask them to come out and have a talk with your aunt. So that's a possibility. I'm sorry, is the orange light, does that mean I'm... I also want to point out the meaningful time and meaningful manner in which to be heard. And in this particular case, it was 15 days from the date of being picked up by the police until she had a hearing. 15 days. And that is a great span of time when the only basis for that emergency pickup was the judge issuing the order. And without any evidence on the record that that was done with a finding of necessity. I would argue that... When did the doctors hear? When did the doctors see her? You know, I don't have that information off the top of my head. I think it was on the next day. Two doctors saw her on the 21st. Then there was a later certificate, a later not required certificate, that was done closer to September 4th, which was the date of the hearing. And it was a certificate done by the then treating psychiatrist. But I appreciate that a person who has been surprised at home by the police, removed from her home and taken to the hospital, may not be in the best condition to be meeting with a psychiatrist at that point. You can imagine that someone who has been given notice and had a chance to understand this would have a better presentation to the doctors. So I don't know that those certificates really give us the best picture of a respondent, and in particular Ms. M. I see my time is out. Thank you very much. May it please the court, I'm Assistant Attorney General Richard Huzak, representing the Intervenor Lisa Madigan, Attorney General, with respect to the constitutional issues that were raised in this case, and I think we got a Rule 19 notice about that. Keep your voice up, please. Will do, Your Honor. I'd like to first clarify, and it's relevant to the forfeiture issue, that there's a distinction between the constitutional issue that was raised in the opening brief. We argued that that was forfeited because it wasn't raised in the lower court, and that implicates the issues of mootness. We've discussed that in our brief. Unless the court has additional questions on the interplay of those issues, I'll leave that alone. But there's a separate issue regarding the statutory claim that's being made for the first time in the reply brief and in oral argument, which is that there was a failure to comply with Section 3704 as it's interpreted, or that that interpretation is mandated by constitutional necessity here. That argument doesn't appear anywhere in the opening brief or in the lower court, and I think in this situation you have a double forfeiture, and the court should be especially reluctant to reach that issue. And I would say so because in this case, this is not a case in which the facts cry out for the court to forgive or excuse a forfeiture based upon the notion that the requirements of Section 3704 wouldn't be met. We have a situation in which the petition was submitted by the niece under criminal penalty for making false statements. It's subject to the requirements of Section 3601 that require that it set forth in detail facts that support the basis for the ultimate propositions that the person is in need of immediate hospitalization, suffers from a mental illness, and if untreated would be either at risk of deterioration or potentially a danger to himself or herself or others. All of that's in the petition. The petition says that the woman here believed that her identity had been stolen by aliens. She was taking showers with her clothes on. She had an untreated skin infection with sores that were oozing from her skin. The doctors subsequently confirmed that that was a potentially fatal infection. This was, on the face of those papers, an emergency situation that absolutely justified application of this narrow aspect of Section 3704. We couldn't agree more that it is important for courts to apply this power in a careful, selective fashion, not just willy-nilly issue writs across the board. And I can't speak to the accuracy of the anecdotal evidence that this power is not used with sufficient reservation by the trial courts. It's outside the record. I don't practice in this area on a general basis, and I wouldn't volunteer my own experience, I think, in this case if that were true. But what I can say is that this case fully justified the application of that. But that's really not an issue that's before the court, and we didn't come into this case to argue whether or not there was satisfaction of the elements of 3704 in this case. We came in to respond to the allegation that was made for the first time in the opening brief that the Mental Health Code is unconstitutional as a violation of procedural due process because it does not require some type of notice and hearing to the respondent. In all cases, I guess, or perhaps as a fallback on an as-applied basis in this case, before there is an order directing that there be an emergency detention for evaluation, for a maximum of 24 hours, and responding to the last question from the court, the two doctor certificates were issued within that 24-hour period. There wasn't a 15-day detention at the mental health facility until the final trial in this case. That detention was based upon the certificates of two doctors that said that the elements of the statute were met and that immediate hospitalization was necessary. So let's focus then on the procedural due process issue in this case rather than the statutory one. If the court wants further briefing on the statutory issue and directs us to submit such briefing, we would be only too glad to do so, but in having arisen for the first time in the reply brief, we feel a little bit at a disadvantage trying to address solely an oral argument if the court thinks that that's a live issue for purposes of resolving this appeal. I think a fair analogy, and analogies have limited use but they're relevant to a certain extent, is the criminal context of an arrest subject to a probable cause hearing, the so-called Gerstein hearing. And the courts have long recognized that there is no need for a probable cause hearing before that preliminary detention takes place and that's implemented by executive officers, typically the police. Another analogy would be a temporary restraining order, which normally should not be granted on an ex parte basis, but in limited situations the law authorizes an ex parte temporary restraining order. And it's when the necessity of that narrow relief in time based upon compelling circumstances justifies it that the law permits it only for that brief period of time. I think those analogies help inform the constitutional analysis in this case. The court, I'm sure, is familiar with the general three-factor analysis, Matthews versus Eldridge. You look at the personal interest, you look at the sliding scale of the risk of erroneous deprivation if you provide less procedures or different procedures, or the benefits in avoiding erroneous deprivations by providing more procedures. And then finally the government interest, both the substantive interest and then also the administrative and fiscal burdens from providing the greater procedures that are invoked here. We should look at Matthews to determine the merits of this case? To address the procedural due process issue, I mean just a well-recognized Matthews analysis to the extent that there is either a facial attack on 3704 allowing an emergency order for detention without a prior hearing. I mean the court asked, what type of hearing are you saying the Constitution requires? And the answer came back, there has to be live testimony by somebody to support that type of order. I don't think that the mental health code on its face requires that, so that would be imposed by the court as a matter of constitutional necessity. Essentially either in grafting it out of the statute or invalidating the statute to the extent that it doesn't include that requirement of live testimony. They've indicated that apparently they don't believe the Constitution requires that there be an attorney appointed at that time. I assume that the respondent would be present, would have the right to be present, although that's not entirely fleshed out in the briefs. But even just for the limited purpose or the limited suggestion that's made here of having live testimony, there's a balancing that the court has to engage in in evaluating the constitutional issue. And here the key is that you would potentially defeat the government's need here in potentially urgent circumstances by always requiring that type of presentation. It's not required for ex-party TROs. It's not required for an arrest pending a Gerstein hearing or probable cause hearing. So the law acknowledges that sometimes based upon affidavits or equivalent or reliable evidence that that type of temporary detention is permissible. Here it's limited to 24 hours. Here its sole purpose is to permit the court to find out when there's no certificate accompanying the petition whether the person is subject to immediate hospitalization, needs immediate hospitalization in addition to meeting the other statutory requirements. It's a very carefully crafted provision in the statute. The statute doesn't require the court to do that. Alternatively, it can order a detention at the respondent's residence or at a mental health facility simply pursuant to a court order telling the respondent to show up. So the statute seems to be well crafted to allow this menu of options depending upon the exigencies of the circumstance and to say that in all cases it's unconstitutional by not requiring a prior hearing with a witness to testify would not only significantly increase the burdens upon the government and the delay and the awkwardness of it, but it would also potentially defeat the government's ability to fulfill its substantive purpose of protecting either the mentally ill themselves or the public at large if you have an emergency situation where you don't already have a doctor or another qualified professional who has had the opportunity to submit a certificate. So our position is if you would analyze the Matthews v. Eldridge test against this statute, that the statute passes constitutional muster certainly on its face and as applied, and I would urge the court to affirm the judgment below and as I indicated in my brief, even if the court were to disagree, that shouldn't nullify the ultimate finding after the trial in this case. Thank you for your time, Your Honor. Thank you, Your Honors. In light of the argument that was presented, there was no discussion of Respondent's arguments two or three, sufficiency of the evidence. Let me very briefly discuss mootness and the exceptions to mootness. In particular, the only one that I think I need to discuss is the collateral consequences issue. I will point out that this court on April 13 of 2010 affirmed the Respondent's prior involuntary admission. That is in Appeal number 4090392, which was consolidated with the appeals of Aaron R. 4090297 and Charles K. 4090430. So whatever collateral consequences there are of that, I will not discuss. And with your permission, I will either return my time to the court or to counsel. Questions? Thank you, Your Honor. Unless the court has additional questions. I would like to stand on my own. Very good. Rebuttal? Any arguments concerning the collateral consequences? Based on the decision in the earlier Ms. M. case, I agree with the State Prosecutor as far as application of collateral consequences based on the Alfred H. H. decision to the third issue. I do not agree with respect to the second issue. I think you could even reach that third issue if necessary and I'll tell you why. But first, the nexus issue. The nexus issue is because of mental illness, because of mental illness does the person exhibit some type of active or passive harm? The active harm we're not dealing with here. It's the passive harm. Alleged neglect and inability to provide for basic physical needs. I argue that that is a legal question. That nexus must be present and that's not just a sufficiency of the evidence argument. That is a question of because of one thing are we seeing the other? And there has to be that connection. Here all we have, we have a couple of things that the doctor relied upon. The doctor said I think she's making erratic decisions and she talked oddly about her identity and her social security number. The doctor relented on the social security number and said yeah I'm cautious too about handing out my social security number. And we must remember that Ms. M worked for the federal government and she said I've seen all kinds of abuses with social security numbers so I try to be cautious. The doctor said me too. But she made a joke about not being able to find her ID at the time and said I wonder if aliens stole my ID. She explained that very well in the record and that's included in the briefs. In addition we have the doctor saying that... I'm not sure that your argument is rebutting arguments made by opposing I'll move on. But I want the court to recognize that that nexus is very important. The question of whether that nexus must be there has not been addressed before. I think it's something that can be repeated in other cases. So that is something that is capable of repetition in evading review. As far as the basic needs question itself, can a court commit a person 15 days after admission when whatever problem may have existed at the time of admission is now taken care of adequately. Commitment must be based at the time of hearing not on an alleged pre-admission failure to obtain treatment. But I'd like to go back to really the main issue in this case and the most important issue. I would like to point out that this is not an issue that is being raised for the first time in the reply brief or in the oral argument. The brief asks the question, did the trial court comport with due process requirements? If the trial court did not do what was required in the statute and this court does not interpret the statute as requiring that finding of necessity, then I think the statute is unconstitutional. That is how I conclude my argument in the main brief. Argument number one, main brief. The Attorney General's office is asking for this court to say expediency is okay. Expediency is okay. Let's not make accommodations for persons with disabilities. And it's disappointing, when I look at the Attorney General's website, there's a whole section on caring for the persons with disabilities. The rights of persons with disabilities. And it's a little disappointing to have the Attorney General coming in and arguing that let's be expedient. Somebody comes in with a petition, it's okay to issue the order. The Attorney General says the statute doesn't impose live testimony. But then in the Attorney General's brief, the Attorney General says, if there's credible evidence, then it's okay for this order to be entered. Today, in argument, the Attorney General's office said, if there's reliable evidence, it's okay for this writ to be entered. How do we know it's credible? How do we know it's reliable? Unless there's an inquiry. Case law says the petition is not evidence. There must be some minimum inquiry to find out what the emergency is. And if it's an emergency that warrants sending the police to someone's home. Someone who is alleged to have a mental disability. Someone who may be quite affected by the police showing up at the door. And then just making matters worse. Thank you.